Jon Weiner
Attorney at Law
10260 SW Greenburg Road  Suite 400
Portland, OR  97223
Tel: (503) 399-7001
jweiner@nw-attorneys.com
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Eugene Division

Case No.

KARLA HUNT, an individual,

        Plaintiff,

v.

VOLARE HEALTH LLC, a Foreign
Limited Liability Company,

        Defendant.

**COMPLAINT**

**Claims for Retaliation in Violation of the Fair Housing Act (42 USC §§3604, 3617) and Oregon Law (ORS 659A.199).**

**(Demand for Jury Trial)**

## PRELIMINARY STATEMENT

1.

The allegations set forth herein are intended to apply to "all times relevant" without regard to whether they are stated in the past, present, or future tense. Plaintiff brings this action against her former employer Defendant Volare Health LLC (hereinafter "Volare"), asserting claims for retaliation in violation of the Fair Housing Act (42 USC §§3601 et seq. (FHA)) and Oregon law (ORS 659A.199 ).

Page **1** of **11** – COMPLAINT

## JURISDICTION

2.

This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States. Plaintiff's private right of action under the FHA is authorized by 42 USC §3613. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367. Plaintiff's state law claim, which is authorized under ORS 659A.885(1), (2), and (3), is so closely related to her federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

3.

Venue is appropriate in this Court pursuant to 28 USC § 1391 because a substantial majority of the events giving rise to this complaint occurred in Marion County, Oregon.

## FACTUAL ALLEGATIONS

4.

Volare is a Kentucky Limited Liability Company that owns and operates a string of assisted living facilities in Hawaii, Louisiana, and Oregon. Within Oregon, Volare has facilities in Corvallis, Eugene, Grants Pass, Keizer, Medford, Roseburg, and Woodburn. Volare employs more than 100 employees in the State of Oregon alone. Volare is subject to the requirements of the FHA and Oregon Revised Statutes, Chapter 659A.

5.

Volare purchased French Prairie Nursing and Rehabilitation Center ("French Prairie"), located in Woodburn Oregon, in 2023. French Prairie is a Residential Skilled Nursing Facility

with about sixty beds. Plaintiff had been employed at French Prairie for 17 years at the time Volare purchased it. Plaintiff continued working at French Prairie as a Volare employee after the company assumed control of the facility in March 2023. She worked there until Volare discharged her on August 28, 2023.

6.

In April 2023 (the month after Volare assumed control of French Prairie), the facility's Licensed Nursing Home Administrator Jenna Davis quit due to dissatisfaction with Volare management. Volare turned to Plaintiff for help since she had previously served in that position for several years. At Volare's behest, Plaintiff agreed to act as Interim Licensed Nursing Home Administrator. French Prairie was required by law to operate under the license of a Licensed Nursing Home Administrator at all times.

7.

About a month after Ms. Davis departed Volare her replacement Denise Crisone fled too (as did several other members of the leadership team). Once again, Volare turned to Plaintiff. Once again, Plaintiff reluctantly agreed to step back into the position of Interim Licensed Nursing Home Administrator. Plaintiff served in that position until July 6, 2023. The next day, after working 10 days straight, Plaintiff went on vacation.

8.

Prior to leaving for vacation, Plaintiff was asked to "leave" her nursing home administrator's license "in place" over the facility while she was away. Although uncomfortable doing so, Plaintiff agreed. While Plaintiff was away, Lynn Drummond was hired as the new Interim Licensed Nursing Home Administrator. Upon her return from vacation, Plaintiff returned to her job as Admissions and Business Development Director.

9.

Around the same time as she took her vacation (either immediately prior or just after), Plaintiff participated in a work training conference call. One of the topics of the training was disability discrimination. The trainer explained that it is **lawful** to decline a patient who is behaviorally inappropriate for placement at a facility due to active mental health or substance abuse issues. However, the trainer also instructed it is **unlawful** to decline a patient because he has been diagnosed as suffering from either condition but had no active presentation. Plaintiff understood that instruction as a specific application of laws prohibiting discrimination on the basis of disability generally (including the FHA, the Americans with Disabilities Act (ADA) and the Rehabilitation Act).

10.

On July 24, 2023, Plaintiff was asked by Director of Nursing Diana Schweitzer to screen a patient ("Patient" or "the Patient") at Salem Hospital for possible admission to French Prairie. The Patient was a 56-year-old male with a mental health diagnosis. Plaintiff drove to Salem Hospital to conduct an assessment and meet with Salem Hospital Case Manager Barb Swan.

11.

Plaintiff received a detailed report on the Patient and spoke with some of his caregivers. The caregivers reported that the patient had become a favorite for many of the staff. When asked about behavioral issues, a nurse stated that although the Patient had a PRN (as needed) order for medication to address any possible behavioral issues and/or mental health events that might arise, the medication had not been used even once in his time at the hospital (he had been there several months). Plaintiff was also informed that although the patient had a history of

recreational marijuana use he had never used or even attempted to use during the several months he had been at Salem Hospital.

12.

Plaintiff spoke with the patient directly for somewhere between 15-30 minutes. They discussed his mental health diagnosis and ability to be comfortable in a community setting. The patient shared that he had support from mental health services in Marion County and his counselor had continued to visit him in the hospital. The patient indicated he understood he would not be allowed to smoke marijuana during his stay at French Prairie and committed to complying with that requirement.

13.

Upon completion of the patient interview, Plaintiff met again with Barb Swan and let her know that the patient appeared to be a good fit for French Prairie. Plaintiff explained that the admission would need to be approved by Nursing Director Diana Schweitzer and Interim Administrator Lynn Drummond. Plaintiff also explained that Volare would need to verify the patient's Medicaid funding, confirm the continued participation of Marion County mental health services, and obtain certain other information prior to admission.

14.

Plaintiff returned to French Prairie to discuss the case with Diana Schweitzer and Lynn Drummond. Drummond was gone for the day but Ms. Schweitzer was still available. Plaintiff explained to Ms. Schweitzer that she was unable to identify any clinical reason to decline the patient's application for admission and then requested Ms. Schweitzer's approval of the application. Ms. Schweitzer gave her approval to the patient's admission, conditioned on

completion of the rest of the intake process and approval from Interim Administrator Drummond.

15.

The next morning Plaintiff again spoke with Salem Hospital Case Worker Barb Swan. Plaintiff let her know that Director of Nursing Schweitzer had approved the Patient's admission, but final approval still needed to be obtained from Lynn Drummond. Ms. Swan indicated she would set about obtaining the necessary documentation in anticipation of the Patient's admission. Plaintiff met with Lynn Drummond later that day to discuss Plaintiff's findings.

16.

Plaintiff indicated to Ms. Drummond that the Patient met the eligibility criteria for admission to French Prairie. Ms. Drummond was angry and indicated she was unwilling to approve the admission. Plaintiff advocated for the Patient's admission, pointing out that there existed no legal reason to decline it. Ms. Drummond indicated she was declining the admission.

17.

Plaintiff and Ms. Drummond had very recently discussed Plaintiff's disability training conference call. It seemed to Plaintiff that the situation at hand was a clear example of disability discrimination (based on the existence of a mental health-related disability with no active presentation) in violation of the FHA. Disability Discrimination based on mental health-related disabilities was a "hot topic" in the industry at the time. Plaintiff and Ms. Drummond had discussed it thoroughly. Plaintiff asked Ms. Drummond several times to reconsider, noting that declining an admission based on a non-presenting mental health diagnosis violated the FHA and constituted disability discrimination.

18.

After Plaintiff's third or fourth request for reconsideration, Ms. Drummond stated that Plaintiff had put her in a very difficult position. Plaintiff again asked whether Ms. Drummond was declining the admission. Ms. Drummond finally stated that the Patient was "not the kind of patient we are looking for" due to his age and mental health diagnosis. Ms. Drummond said she was unwilling to approve the admission of "a 56-year-old man with a mental health diagnosis," for whom the facility would be required to provide care "for the next 30 years." Plaintiff accepted Ms. Drummond's decision and reported it to Barb Swan.

19.

On August 22, 2023, Plaintiff received a Disciplinary Final Written Warning that included concerns about "Insubordination" and "Team Dynamics." At least some of the allegations in the Final Written Warning clearly related to Plaintiff's advocacy for the Patient and her opposition to disability discrimination. Plaintiff's receipt of the Final Written Warning was the first time she had received discipline during her 17-plus years at French Prairie.

20.

On August 24, 2023, Plaintiff received a follow-up call from Barb Swan. Ms. Swan requested once again that Volare reconsider the Patient's application for admission. Plaintiff said she was sorry, but she did not feel she was in a position to provide any further advocacy for a patient that the facility had already declined. Ms. Swan noted that the Patient continued to be stable and that all of Volare's concerns had been addressed. Plaintiff said she was sorry but could not assist further.

21.

Plaintiff's August 24, 2023 conversation with Ms. Swan occurred after Plaintiff had received her Final Written Warning. Plaintiff was fearful that bringing up the patient's admission application again would result in further disciplinary action,

22.

Plaintiff was terminated by Volare on August 28, 2023 in retaliation for the protected conduct described herein.

### FIRST CLAIM – RETALIATION IN VIOLATION OF THE FAIR HOUSING ACT

### ((42 USC §§3604, 3617))

23.

Plaintiff incorporates by reference paragraphs 1 through 22. FHA prohibits nursing and skilled nursing facilities from discriminating on the basis of disability. In particular, 42 USC §3604 (f) provides that it is unlawful:

> (1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
>
> (A) that buyer or renter;
> (B ) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
> (C) any person associated with that buyer or renter.
>
> (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—
> (A) that person; or
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
> (C) any person associated with that person.

42 USC §3604.

The FHA also contains an anti-retaliation provision, which provides:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the

exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.
42 USC §3617.

24.

Under 42 USC §3604, the patient had a right to be free from disability discrimination when applying for placement at Volare, as well as a right not to be rejected based on disability-based animus. Those rights were violated when Volare declined to admit the Patient to French Prairie based on his mental health diagnosis and associated mental impairment substantially limiting one or more major life activities, which qualified as a disability under the FHA, ADA, and Rehabilitation Act.

25.

Absent Volare's disability-based discriminatory animus, the Patient would have been accepted to live at Volare's French Prairie skilled nursing facility and Plaintiff would not have been disciplined, placed on administrative leave, or discharged. Plaintiff aided and encouraged the Patient's exercise of his right to be considered and accepted for placement at Volare absent such discriminatory animus. Plaintiff's conduct, protected under the FHA, included (but was not necessarily limited to) the following:

- Plaintiff opined that there were no legitimate barriers to accepting the Patient for placement at French Prairie;

- Plaintiff reminded Ms. Drummond multiple times that her reliance on the patient's mental health disability (with no active presentation) as a basis for declining the Patient's application was unlawful;

- Plaintiff advocated for the Patient's admission because she reasonably believed that Ms. Drummond's decision declining admission constituted unlawful disability

Page **9** of **11** – COMPLAINT

discrimination.

26.

Volare retaliated against Plaintiff in violation of 42 USC §3617 when it placed Plaintiff on administrative leave, issued her a Final Written Warning, and then discharged her in retaliation for engaging in the above-described protected conduct. Volare coerced, intimidated, threatened, and interfered with Plaintiff's aiding and encouraging the Patient's exercise of his 42 USC §3604 right to be free from disability discrimination.

27.

The materially adverse employment actions taken against Plaintiff by Volare were the product of retaliatory animus, transparently masked by pretextual reasons offered by Volare as justification for Plaintiff's discharge. Under 42 USC §3613(c)(1), Plaintiff is entitled to economic and non-economic damages, punitive damages, and such other relief as this Court deems appropriate, in amounts to be established at trial. Under 42 USC §3613(c)(2), Plaintiff requests reasonable attorney fees and costs.

## SECOND CLAIM – STATE LAW WHISTLEBLOWER RETALIATION

### (ORS §59A.199 – Retaliation)

28.

Plaintiff incorporates paragraphs 1 through 27 by reference. ORS 659A.199(1) provides, "It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation."

29.

Volare violated this provision when it subjected Plaintiff to adverse employment actions based on her good faith reports of – and opposition to - information she subjectively and reasonably believed was evidence of a violation of a state or federal law, rule, or regulation.

30.

Pursuant to ORS 659A.885(1), (2) and (3), Plaintiff is entitled to backpay and any other equitable relief that may be appropriate in amounts to be established at trial; compensatory and punitive damages in amounts to be established at trial; and reasonable attorney fees and costs.

WHEREFORE, Plaintiff Karla Hunt requests the following remedies on her claims for relief against Defendant Volare, set forth more specifically above:

1.  First Claim for Relief: Pursuant to 42 USC §3613(c)(1), Plaintiff requests economic and non-economic damages, punitive damages, and such other relief as this Court deems appropriate, in amounts to be established at trial. Pursuant to 42 USC §3613(c)(2), Plaintiff requests the Court award Plaintiff her reasonable attorney fees and costs.

2.  Second Claim for Relief: Pursuant to ORS 659A.885(1), (2) and (3), Plaintiff requests awards for backpay and any other equitable relief that may be appropriate, compensatory damages, and punitive damages, all in amounts to be established at trial. Pursuant to ORS 659A.885, Plaintiff requests an award for her reasonable attorney fees and costs.

DATED this ____ Day of November, 2024,

          */s/ Jon Weiner*
          Jon Weiner, OSB # 993944
          10260 SW Greenburg Road  #400
          Portland, OR 97223
          Tel: (503) 399-7001
          jweiner@nw-attorneys.com
          Attorney for Plaintiff