IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| KARLA HUNT, | Civ. No. 6:24-cv-01843-AA |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| VOLARE HEALTH LLC, | |
| Defendant. | |

AIKEN, District Judge.

This case comes before the Court on a Motion to Dismiss filed by Defendant Volare Health LLC. ECF No. 7. The Court has determined that this motion is suitable for resolution without oral argument. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

**LEGAL STANDARDS**

To survive a motion to dismiss under the federal pleading standards, a pleading must contain a short and plain statement of the claim and allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a pleading does not require "detailed factual allegations," it needs more than "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 677-78. "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. Legal conclusions without any supporting factual allegations do not need to be accepted as true. *Id.*

## BACKGROUND

Defendant Volare Health LLC is a Kentucky limited liability company that operates assisted living facilities in Oregon. Compl. ¶ 4. One of Defendant's Oregon facilities is French Prairie Nursing and Rehabilitation Center, a "Residential Skilled Nursing Facility" with sixty beds in Woodburn, Oregon. *Id.* ¶ 5. Defendant assumed control of French Prairie in March 2023. *Id.*

Plaintiff Karla Hunt worked at French Prairie for seventeen years prior to Defendant's acquisition of the facility and continued to work there as an employee of Defendant from March 2023 until she was terminated by Defendant on August 28, 2023. Compl. ¶ 5. Plaintiff primarily worked as French Prairie's Admissions and Business Development Director, but Plaintiff also served temporarily as the Interim Licensed Nursing Home Administrator on two occasions during the period of her employment by Defendant. *Id.* at ¶¶ 6-7.

Plaintiff left for a vacation on July 7, 2023, and, during her absence, Lynn Drummond was hired as the Interim Licensed Nursing Home Administrator. Compl. ¶ 8. When Plaintiff returned, she resumed her ordinary duties as Admissions and Business Development Director. *Id.*

On July 24, 2023, Plaintiff was asked by Diana Schweitzer, French Prairie's Director of Nursing, to screen a new patient (the "Patient") at Salem Hospital for possible admission to French Prairie. Compl. ¶ 10. The Patient was a fifty-six-year-old man with a mental health diagnosis. *Id.* Plaintiff drove to Salem Hospital where she received a detailed report on the Patient and spoke with his caregivers. *Id.* at ¶¶ 10-11. Plaintiff was told that the Patient had become a favorite among staff and, when she asked about behavioral issues, "a nurse stated that although the Patient had a PRN (as needed) order for medication to address any possible behavioral issues and/or mental health events that might arise," the medication had not been needed during the Patient's months-long stay at the hospital. *Id.* at ¶ 11. Plaintiff was also told that the Patient had a history of recreational marijuana use, but that he had not used or attempted to use marijuana during his time at the hospital. *Id.* Plaintiff conducted a brief interview with the Patient, where they discussed "his mental health diagnosis and ability to be comfortable in a community setting." *Id.* at ¶ 12. The Patient shared that he had mental health support in place and stated that he understood he would not be able to use marijuana at French Prairie. *Id.*

Plaintiff believed that the Patient would be a good fit at French Prairie, contingent upon Medicaid funding and the Patient's continued participation in mental health treatment. Compl. ¶ 13.

Plaintiff returned to French Prairie to present her findings to Schweitzer. Compl. ¶ 14. Plaintiff told Schweitzer that "she was unable to identify any clinical reason to decline the patient's application for admission" and requested approval of

the application. *Id.* Schweitzer gave her approval, conditioned on the completion of the rest of the intake process and on approval from Drummond. *Id.*

Plaintiff met with Drummond the following day and told her that the Patient met the eligibility requirements for French Prairie. Compl. ¶ 16. Drummond "was angry and indicated she was unwilling to approve the admission." *Id.* Plaintiff "advocated for the Patient's admission, pointing out that there was no legal reason to decline it," but Drummond "indicated she was declining the admission." *Id.*

Plaintiff believed that this was "a clear example of disability discrimination" and "asked Ms. Drummond several times to reconsider, noting that declining an admission based on a non-presenting mental health diagnosis violated the FHA and constituted disability discrimination." Compl. ¶ 17. "After Plaintiff's third or fourth request for reconsideration, Ms. Drummond stated that Plaintiff had put her in a very difficult position" and, when Plaintiff asked again whether Drummond was declining admission, she "finally stated that the Patient was 'not the kind of patient we are looking for' due to his age and mental health diagnosis." *Id.* at ¶ 18. Drummond said she "was unwilling to approve the admission of 'a 56-year-old man with a mental health diagnosis,' for whom the facility would be required to provide care 'for the next 30 years.'" *Id.* Plaintiff accepted Drummond's decision and reported it back to Salem Hospital. *Id.*

On August 22, 2023, Plaintiff received a Disciplinary Final Written Warning which said:

> Karla has not been successfully performing her job duties and working with the team. After being told many times by her supervisor, she has

worked outside of her assigned working hours and has been performing tasks outside of her job description. Karla performing outside of her job duties has caused issues, one being a major medication error which could have caused severe harm/death to the resident. Staff have also expressed concerns about Karla not working as a team and overstepping. Karla has undermined management and has been insubordinate. She is causing a hostile work environment and is not setting the team up for success. Karla is also abusing the use of a company phone.

Knox Decl.[1] Ex. 1, ECF No. 8; Compl. ¶ 19.

This was the first discipline Plaintiff had received in her seventeen years at French Prairie. Compl. ¶ 19.

On August 24, 2023, Plaintiff received a follow-up call from Salem Hospital asking that Plaintiff reconsider the Patient's application for admission. Plaintiff told hospital staff that she was sorry but could not help them and "she did not feel she was in a position to provide any further advocacy for a patient the facility had already declined." Compl. ¶ 20. "Plaintiff was fearful that bringing up the patient's admission application again would result in further disciplinary action." *Id.* at ¶ 21.

Defendant terminated Plaintiff's employment on August 28, 2023. Compl. ¶ 22.

---

[1] Defendant requests that the Court consider the Final Written Warning issued on August 22, 2023, under the doctrine of incorporation by reference. Def. Mot. 3 n.2. Incorporation by reference is a judicial doctrine "that treats certain documents as though they were part of the complaint itself" and may be applied "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (internal quotation marks and citation omitted). Here, the Complaint references and briefly quotes the Final Written Warning and Plaintiff's claims rely at least in part on the Final Written Warning in that they assert the stated reasons for Plaintiff's termination were pretextual and that Plaintiff was terminated for opposing discrimination. Plaintiff has not objected to the submission of the Final Written Warning in the Knox Declaration and the Court concludes that the document is a proper subject for incorporation by reference.

## DISCUSSION

Plaintiff brings claims for (1) retaliation in violation of the Fair Housing Act, 42 U.S.C. §§ 3604, 3617, Compl. ¶¶ 23-27; and (2) a state law claim for whistleblower retaliation under ORS 659A.199, Compl. ¶¶ 28-30. Defendant moves to dismiss both claims.

### I. Fair Housing Act

As a preliminary matter, Defendant has moved to dismiss Plaintiff's claim under 42 U.S.C. § 3604, which prohibits discrimination in the sale or rental of housing, on the basis that Plaintiff is not an "aggrieved person" and so is unable to bring a claim under § 3604. In her Response, Plaintiff asserts that she has not brought a claim under § 3604. Pl. Resp. 2. ECF No. 10. Defendant's concern that a § 3604 claim was being made is understandable based on the structure of the Complaint, but the Court will accept Plaintiff's representation that no such claim is alleged.

The Court therefore turns to Plaintiff's FHA retaliation claim, which is based on 42 U.S.C. § 3617:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section . . . 3604 . . . of this title.

42 U.S.C. § 3617.

Section 3604, in turn, provides that is unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, to any buyer or renter," or to

"discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling" because that person is handicapped. 42 U.S.C. §§ 3604(f)(1), (2).

To establish a prima facie case of retaliation under the FHA, a plaintiff must show that (1) she engaged in a protected activity; (2) the defendant subjected her to an adverse action; and (3) a causal link exists between the protected activity and the adverse action. *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001).

Here, Defendant challenges whether Plaintiff has shown that she engaged in a protected activity or that a causal link exists between that activity and the adverse action.

With respect to the protected activity, Defendant asserts that there is no allegation that Plaintiff aided a third party in asserting their FHA rights. "Examples of 'protected activity' include advocating for fair housing rights, reporting discrimination to a public body, requesting a reasonable accommodation for a disability, or filing a complaint with a landlord or housing organization." *Macon v. Proud Ground Organization*, 3:20-cv-01660-HZ, 2021 WL 3354157, at *6 (D. Or. July 30, 2021) (collecting cases). However, the terms "aiding and encouraging" the exercise of rights, even in terms of advocacy, are not unlimited in scope. In *Walker*, the Ninth Circuit found that the plaintiff, a housing counseling program, had shown that it had engaged in a protected activity by

> "[A]iding or encouraging," 42 U.S.C. § 3617, the Park Plaintiffs in the exercise of their fair housing rights. The [plaintiff] met with the Park Tenants, presented them with their options, referred them to an attorney; served in a "paralegal capacity" for the attorney; continued to

> investigate the Park Apartments, using their usual techniques; issued a press release and conducted a press conference in conjunction with the filing of the lawsuit; and attempted to join the lawsuit as a plaintiff.

*Walker*, 272 F.3d at 1128 (alterations normalized).

The examples in *Walker* all concerned actions that the plaintiff had taken with the direct involvement of the individuals whose rights were implicated. Here, by contrast, the "aiding" alleged by Plaintiff is a single argument she had with Drummond with no allegation that the Patient was involved or even aware of the dispute. Plaintiff does not allege that she ever spoke with the Patient or his caregivers about his FHA rights or her concerns that Drummond was engaged in discrimination. Because Plaintiff does not allege that she "aided or encouraged" the Patient in the exercise of his rights under the FHA, the Court concludes that Plaintiff has failed to state a claim under § 3617. Defendant's motion to dismiss that claim will therefore be granted.

Because this defect might be remedied by the allegation of additional facts, dismissal shall be with leave to amend.

## II. Oregon Whistleblower Retaliation

Oregon's whistleblower protection statute, ORS 659A.199, provides that it is an "unlawful employment practice" for an employer to fire, demote, suspend, or "in any manner discriminate or retaliate against an employee" in the terms of their employment "for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation." ORS 659A.199(1).

As with a federal retaliation claim, a prima facie claim requires that the plaintiff show that (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the activity and the adverse action. *Lindsey v. Clatskanie People's Utility Dist.*, 140 F. Supp.3d 1077, 1086 (D. Or. 2015).

Defendant argues that, even assuming Plaintiff demonstrated a protected activity, she has failed to adequately allege that a causal relationship between the activity and her termination. To demonstrate a causal link, a plaintiff must show that the protected activity was the "but for" cause of the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). "Oregon courts use a 'substantial factor' test but construe the test as a 'but for' standard." *Lindsey*, 140 F. Supp.3d at 1088.

A plaintiff may satisfy causation through "circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). "[W]here an adverse employment action follows on the heels of protected activity," timing alone is sufficient to show causation. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). "The Ninth Circuit has considered temporal proximity of several months or less sufficient to support an inference of causation," but cautioned that the time period should not be applied mechanically and should be analyzed with reference to the factual setting. *Karthauser v. Columbia 9-1-1 Comms.*

*Dist.*, 647 F. Supp.3d 992, 1020 (D. Or. 2022) (citing *Van Asdale v. Int'l Game Tech*, 577 F.3d 989, 1003 (9th Cir. 2009)).

Here, the time between the alleged protected action and the adverse employment actions was very short. Plaintiff alleges that she argued with Drummond about the admission of the Patient on July 25, 2023; she received the Final Written Warning only four weeks later, on August 22, 2023; and she was terminated six days after that, on August 28, 2023. Compl. ¶¶ 15, 19, 22. The temporal proximity is very close. Causation is also supported by the factual setting—Plaintiff alleges, and the incorporated exhibits, show that the stated reasons for Plaintiff's discipline included "undermining management" and "insubordination," which Plaintiff plausibly alleges to be references to the contentious meeting between Plaintiff and Drummond on July 25, 2023. Knox Decl. Ex. 1; Compl. ¶ 19.

Defendant argues that Plaintiff has not alleged that Drummond was the ultimate decision maker in Plaintiffs termination, or that Drummond informed the ultimate decisionmaker of Plaintiff's protected activity, or that the ultimate decisionmaker was aware of the protected activity at all. This may be true, but the Ninth Circuit has held that when the temporal proximity is very close and supported by the factual setting, "causation can be inferred *from timing alone.*" *Villiarimo*, 281 F.3d at 1065. Plaintiff has sufficiently pleaded causation for her retaliation claims and the Court declines to grant Defendant's motion on that basis.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss, ECF No. 7, is GRANTED in part and DENIED in part. The Court dismisses Plaintiff's claim under the Fair Housing Act with leave to amend. The Court declines to dismiss Plaintiff's claim under ORS 659A.199.

It is so ORDERED and DATED this ___28th___ day of May 2025.

                                              /s/Ann Aiken
                                              ANN AIKEN
                                              United States District Judge